**IN THE**

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

DOCKET NUMBER
23-4125

UNITED STATES OF AMERICA,

Appellee

v.

DALLAS MICHAEL ACOFF, aka Dal,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
THE HONORABLE JOHN P. BAILEY, DISTRICT JUDGE

APPELLEE'S BRIEF

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

Carly Cordaro Nogay
Assistant United States Attorney
1125 Chapline Street, Suite 3000
Wheeling, West Virginia 26003
(304) 234-0100

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION........................................................................... 1

ISSUES PRESENTED........................................................................... 1

STATEMENT OF THE CASE ............................................................. 1

SUMMARY OF ARGUMENT ............................................................ 6

ARGUMENT ........................................................................................6

    A. Standard of Review…………………………………………...………………6

    B. Analysis…………………………………………………………………......7

        i. The district court did not rely on erroneous facts when considering Mr. Acoff's previous conviction for attempted first degree murder because that crime requires the specific intent to kill……………………………………………………….. 8

        ii. The district court properly considered Mr. Acoff's history and characteristics and provided a detailed rationale for its upward variance................................................................. 11

CONCLUSION ....................................................................................15

CERTIFICATE OF COMPLIANCE.................................................... 16

CERTIFICATE OF SERVICE ............................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                      Page(s)

*Gall v. United States*,
    552 U.S. 38 (2007)........................................................................ 6, 7

*State ex rel. Smith v. Sims*,
    814 S.E.2d 264 (W. Va. 2018)........................................................ 10

*State v. Starkey*,
    244 S.E.2d 219 (W. Va. 1978).................................................. 10, 11

*United States v. Blue*,
    877 F.3d 513 (4th Cir. 2017) ........................................................ 12

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ..................................................... 7, 11

*United States v. Friend*,
    2 F.4th 369 (4th Cir. 2021) .......................................................... 12

*United States v. Lozano*,
    962 F.3d 773 (4th Cir. 2020) ........................................................ 12

*United States v. Montes-Pineda*,
    445 F.3d 375 (4th Cir. 2006) ........................................................ 11

*United States v. Schuler*,
    282 F. App'x 221 (4th Cir. 2008) ................................................. 14

*United States v. Watts*,
    519 U.S. 148 (1997)........................................................................ 8

*United States v. Wooden*,
    887 F.3d 591 (4th Cir. 2018) .......................................................... 9

## Guidelines

U.S. Sent'g Guidelines Manual § 1B1.4 ................................................................. 8

U.S. Sent'g Guidelines Manual § 4B1.2(d)(2) ..................................................... 14

U.S. Sent'g Guidelines Manual § 4A1.3 ............................................................. 14

## Statutes

18 U.S.C. § 3231 .................................................................................................. 1

18 U.S.C. § 3553 ........................................................................................... *passim*

18 U.S.C. § 3661 .................................................................................................. 8

21 U.S.C. § 841 .................................................................................................... 3

21 U.S.C. § 860 .................................................................................................... 3

28 U.S.C. § 1291 .................................................................................................. 1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from a Judgment and Commitment Order in a criminal case. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court's judgment was entered on February 17, 2023, and the defendant, Dallas Michael Acoff, aka Dal, timely appealed. *See* JA86, JA94. This appeal is from a judgment that disposes of all claims with respect to all parties.

## ISSUES PRESENTED

Whether the district court abused its discretion when it made an individualized assessment of the Appellant and provided a specific rationale and thorough explanation for the sentence imposed?

## STATEMENT OF THE CASE

**A.      Background**

On April 5, 2022, a federal grand jury indicted Mr. Acoff in a five-count Indictment, charging him with various narcotic offenses. *See* JA6-11. Count One of the Indictment was based on Mr. Acoff's delivery of 6.55 grams of cocaine base to a confidential informant working with the Ohio Valley Drug Task Force in Ohio County, West Virginia. *See* JA73, JA100. The delivery occurred on August 5, 2021, within 1000 feet of Fulton Playground, a protected location. *See* JA100.

Counts Two through Four of the Indictment arose from the following: On February 2, 2022, officers with the Wheeling Police Department attempted to conduct a traffic stop on a vehicle operated by Mr. Acoff. *See* JA100. After a brief vehicle pursuit, Mr. Acoff fled from the traffic stop on foot. *See* JA100. Officers pursued Mr. Acoff and, subsequently, recovered a wallet and several bags of narcotics along Mr. Acoff's flight path. *See* JA100. The narcotics recovered included 17.5 grams of cocaine base, 14.8 grams of cocaine, and 6 grams of methamphetamine. *See* JA100. Following his arrest, Mr. Acoff was transported to the Wheeling Police Department where he provided to officers approximately 2.7 grams of fentanyl that was concealed on his person. *See* JA100.

On October 18, 2022, Mr. Acoff entered a plea of guilty to Counts One through Five of the Indictment without a plea agreement. At his plea hearing, the government proffered a factual basis for the plea, outlining the events described above. *See* JA40-43. Defense counsel did not dispute the proffer except to note Mr. Acoff's intent to dispute the weight of the narcotics recovered. *See* JA44.

## B.     Presentence Report

The probation officer's presentence report ("PSR") reflects that Mr. Acoff's criminal history began at the age of 15 and was nearly continuous through his February 2, 2022 arrest, except for times he was incarcerated. *See* JA103-109. As an adult, Mr. Acoff has two prior federal convictions in the Northern District of West Virginia. *See* JA107-108. Mr. Acoff's most serious conviction is for Attempted Murder in the First Degree from Ohio County, West Virginia in 2019. *See* JA109-110. After considering Mr. Acoff's criminal convictions and that the instant offense occurred while under a sentence for the attempted murder charge, the probation officer determined Mr. Acoff's criminal history score to be 11, for a criminal history category of V. *See* JA110.

The probation officer determined Mr. Acoff's total offense level as follows: a base offense level of 25, less 3 levels for timely acceptance of responsibility for a total offense level of 22. *See* JA102-103. Based upon a total offense level of 22 and a criminal history category of V, Mr. Acoff's corresponding advisory guideline range was 77 to 96 months of imprisonment. *See* JA115. The statutory maximum penalties were 40 years' imprisonment for Count One, and 20 years' imprisonment for Counts Two through Five. *See* JA115; *see also* 21 U.S.C. §§ 841(b)(1)(C) and 860. Mr. Acoff filed objections to the PSR, but those objections were subsequently withdrawn by the time of sentencing. *See* JA66.

## C.       Sentencing

A sentencing hearing was held on February 16, 2023. *See* JA66. On February 13, 2023, prior to the hearing, Mr. Acoff, through counsel, filed a sentencing memorandum requesting a sentence at the low end of the Guideline range or, alternatively, a downward variance. *See* JA123. During the sentencing hearing, the district court announced its finding as to the applicable guidelines and determined the same sentencing range as set forth in the PSR, 77 to 96 months incarceration. *See* JA68-69.

Defense counsel then argued on Mr. Acoff's behalf that Mr. Acoff's untreated mental illness played a large role in his extensive criminal history. *See* JA71. Defense counsel requested a term of imprisonment at the low end of the advisory guideline range and asked the court to recommend mental health treatment at whatever Bureau of Prisons facility to which he was sent. *See* JA72.

After hearing the positions of the parties, the district court imposed a sentence of 240 months, followed by six years of supervised release. *See* JA79-80. The court stated that it had considered all the factors set forth in 18 U.S.C. § 3553. *See* JA82. The court elaborated on its rationale for the sentence, stating:

> Here we have a young man who, over at least the last ten years or so, has been in jail a lot more than he's been out. He has shown an inability to follow the rules and regulations of society. When he has been – he's never successfully completed a term of supervision, and was on supervision when the instant offense was committed.

It is his third felony conviction in this district. He's had aggravated robbery with a sawed-off shotgun, carrying a concealed weapon, and was convicted of murder. That was set aside and for some reason pled to attempted murder, yet the victim's still dead. I believe, based on all this, the criminal history is grossly understated. It's properly calculated, but it's grossly understated. And this community and the communities in Ohio need to be protected from Mr. Acoff.

JA82.

The court observed that Mr. Acoff's criminal history began at the age of 15 and was not accounted for by the sentencing guidelines. *See* JA82, JA103. In its Statement of Reasons explaining the variance made pursuant to 18 U.S.C. § 3553(a), the district court noted: "[t]he nature and circumstances of the offense;" "[t]he history and character of the defendant;" "[t]o reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;" and "[t]o afford adequate deterrence to criminal conduct." JA128. As an "[a]dditional basis for the sentence in this case," the district court stated:

> [i]n considering the factors set forth in Title 18 U.S.C. § 3553(a), the Court varied from the applicable guideline range and imposed a sentence of 240 months, as to Counts 1-5, to be served concurrently. In reaching its decision, the Court stated that the defendant has shown that he cannot conform to the rules of society, has never successfully completed a term of supervision, and was on supervised release when the instant offense was committed. Lastly, the Court stated that the defendant's criminal history is grossly understated, but correctly calculated in the Presentence report.

JA130.

On March 1, 2023, Mr. Acoff filed a timely notice of appeal. *See* JA94. On appeal, Mr. Acoff challenges the procedural reasonableness of his sentence.

## SUMMARY OF ARGUMENT

The district court's imposition of a 240-month sentence was procedurally reasonable. The district court did not abuse its discretion when it considered the unobjected-to facts set forth in the PSR underlying Mr. Acoff's attempted first-degree murder conviction in relation to Mr. Acoff's criminal history. Further, the district court properly considered the § 3553(a) factors and articulated a specific basis for the upward variance. The district court emphasized Mr. Acoff's lengthy criminal history, his pattern of noncompliance while on supervised release, and his inability to conform to the rules of society. Therefore, the district court acted within its discretion in determining an appropriate sentence, and the sentence should be affirmed.

## ARGUMENT

### A.      Standard of Review

This Court reviews a sentence imposed by the district court, "whether inside, just outside, or significantly outside the Guidelines range," under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

Under the abuse-of-discretion standard, this Court must ensure the sentencing court did not commit "significant procedural error" in imposing the sentence. *Gall*,

552 U.S. at 51. "Significant procedural error[s]" include: (1) imposing "a sentence based on clearly erroneous facts"; (2) failing to explain the sentence adequately; or (3) failing to address the defendant's nonfrivolous arguments. *Id.*; *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009). A district court is required to provide "an individualized assessment" based on the facts before the court, and to explain adequately the sentence imposed "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

**B.      Analysis**

The district court did not abuse its discretion when it imposed a 240-month sentence because the district court properly calculated the guideline range, explicitly detailed the reasons for the sentence, and relied on facts supported by the record. Mr. Acoff alleges the district court relied upon clearly erroneous facts in imposing sentence. Appellant's Br. at 9. Mr. Acoff asserts the reason for the district court's upward variance was an erroneous belief that Mr. Acoff had "gotten away with murder" by pleading guilty to attempted murder after he was awarded a new trial following his conviction for the offense of murder. Appellant's Br. at 7. As detailed below, the district court did not rely on erroneous facts and referenced additional factors which supported its upward variance.

Importantly, Congress has established that, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person

convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997). The Guidelines themselves confirm this understanding. In broadly defining the facts to be considered in determining the sentence to be imposed, the Guidelines direct that the sentencing court consider "without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S. Sent'g Guidelines Manual § 1B1.4.

> **i. The district court did not rely on erroneous facts when considering Mr. Acoff's previous conviction for attempted first degree murder because that crime requires the specific intent to kill.**

As noted in the PSR, on October 14, 2016, Mr. Acoff was found guilty of Murder in the Second Degree by a jury in the Circuit Court of Ohio County, West Virginia. JA110. The murder conviction related to the death of Mr. Lemroy Coleman. JA109. As described in the PSR, the facts underlying that conviction are as follows: on October 9, 2015, officers responded to a complaint of multiple shots fired on Jacob Street in Wheeling, West Virginia. JA109. When officers arrived on scene, they observed Mr. Coleman laying on the ground covered in blood. JA109. He was pronounced deceased as a result of gunshot wounds to the chest. JA109.

On December 21, 2017, Mr. Acoff's conviction was overturned, and he was granted a new trial. JA110. On January 16, 2019, Mr. Acoff entered a plea of guilty to attempted first degree murder. JA110. That conviction also related to the shooting of Mr. Coleman. These facts, as set forth in the PSR, went unobjected to at sentencing. JA68.

In the instant appeal, Mr. Acoff asserts the district court erred in its inference that Mr. Acoff caused the death of Mr. Coleman, and that erroneous inference was the sole basis for the court's upward variance from the guidelines. As to the first issue, Mr. Acoff argues that his "attempted murder conviction was factually and legally unrelated to the homicide for which he was originally convicted," but that is patently inaccurate. Appellant's Br. at 7-8.

Mr. Acoff directs this Court to a published case of record wherein the West Virginia Supreme Court of Appeals denied a writ of prohibition to prevent the trial court from enforcing its order vacating Mr. Acoff's conviction for second-degree murder. However, a thorough review of that opinion makes clear that the facts the district court relied on were not clearly erroneous. "A [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Wooden*, 887 F.3d 591, 602 (4th Cir. 2018) (internal quotation marks omitted).

Rather, the opinion highlights Mr. Acoff's involvement in the events that led to both his second degree murder conviction and then his attempted first degree murder conviction. Notably, the State's evidence at trial included video surveillance from security cameras showing Mr. Acoff following the victims out of the American Legion on the evening of October 9, 2015 and firing multiple gunshots at them as he stood on the stairs of the Legion. *State ex rel. Smith v. Sims*, 814 S.E.2d 264, 267 (W. Va. 2018). One of the victims returned gunfire, and Mr. Acoff retreated inside. *Id.* Mr. Acoff testified on his own behalf at trial and admitted to firing shots at Mr. Coleman but claimed he did so in self-defense. *Id.* The State also presented expert testimony that the trajectory of the bullet was consistent with having been shot from a gun held by a shooter standing at a position above the victim, as Mr. Acoff had done. *Id.* at 267–68. The critical dispute at trial was whether the victim was shot by Mr. Acoff or by a second shooter moments later. *Id.* at 267. The theory of a second shooter was established circumstantially at trial. *Id.*

Nevertheless, after his conviction was vacated and he was granted a new trial, Mr. Acoff pled guilty to the attempted murder of Mr. Coleman. Under West Virginia state law, attempt requires: "(1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime." *State v. Starkey*, 244 S.E.2d 219, 223 (W. Va. 1978). "Where formation of criminal intent is accompanied by

preparation to commit the crime of murder and a direct overt and substantial act toward its perpetration, it constitutes the offense of attempted murder." *State v. Burd*, 419 S.E.2d 676, 680 (W. Va. 1991). In other words, attempted murder requires the specific intent to kill.

Because Mr. Acoff admitted, by way of his guilty plea, to having both the specific intent to kill Mr. Coleman and firing multiple gunshots at him, Mr. Acoff's attempted murder conviction is neither factually nor legally unrelated to the homicide for which he was originally convicted. *See Starkey*, 244 S.E.2d at 223; *see also* Appellant's Br. at 7-8. For these reasons, the district court did not abuse its discretion when it considered the fact of, and the facts underlying, Mr. Acoff's prior conviction for attempted first degree murder.

### ii. The district court properly considered Mr. Acoff's history and characteristics and provided a detailed rationale for its upward variance.

This Court has observed that "a court's sentencing statements [should not be evaluated] in a vacuum." *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006). Rather, the "context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." *Id*; *see also, e.g.*, *Carter*, 564 F.3d at 330 (holding that sentencing court must make "individualized assessment" of facts before it which "need not be elaborate or lengthy, but . . . must provide a rationale

tailored to the particular case at hand and adequate to permit meaningful appellate review"). "The explanation is sufficient 'if it, although somewhat briefly, outlines the defendant's particular history and characteristics . . . as part of its analysis of the statutory factors and in response to counsel's arguments [for a reduced sentence].'" *United States v. Lozano*, 962 F.3d 773, 782–84 (4th Cir. 2020) (quoting *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017)). Moreover, in explaining a sentence, it is permissible for the district court "in an appropriate case to place 'great weight' on a single factor." *United States v. Friend*, 2 F.4th 369, 379–81 (4th Cir. 2021) (upholding fifty-two-year sentence imposed on defendant who actively participated in robberies, beatings, and murders when he was a juvenile as procedurally and substantively reasonable where explanation emphasized "the gravity of the offense[s]" over other factors).

Mr. Acoff asserts, "the district court below enumerated three reasons for imposing a without-guidelines sentence: Mr. Acoff's convictions for aggravated robbery, possession of a concealed firearm, and a murder conviction vacated and eventually pleaded to attempted murder." Appellant's Br. at 13 n.6. This assertion is correct, albeit incomplete. It is clear from the record the district court contemplated many factors in addition to the three aforesaid convictions. For example, the district court explicitly referenced Mr. Acoff's inability to conform to the rules of society. The district court noted that Mr. Acoff has never successfully completed a term of

supervision and was on supervised release when the instant offense was committed. *See* JA82, JA130.

During the sentencing hearing, the government accurately described Mr. Acoff's history of noncompliance and inability to conform to the law. First, the government noted that, while serving his sentence on his first federal conviction for conspiracy to distribute cocaine base, Mr. Acoff was released to a halfway house in Wheeling, West Virginia where he absconded from custody. *See* JA75, JA109. Mr. Acoff was charged and pled guilty to escape in 2014 and was sentenced to an additional period of three months incarceration to run consecutively to the aforementioned conspiracy charge. *See* JA108. Mr. Acoff's supervised release for both the conspiracy and escape convictions commenced in October of 2014. *See* JA75, JA108-109. Less than one year later, on October 9, 2015, the events underlying Mr. Acoff's attempted murder conviction occurred. *See* JA109-110. Mr. Acoff pled guilty to attempted first degree murder on January 16, 2019 and was released from state custody on November 8, 2019 to a federal detainer regarding supervised released violations on his conspiracy and escape convictions. *See* JA110. Mr. Acoff was resentenced to 21 months' imprisonment on both cases. *See* JA107-108. He was released on May 28, 2021. *See* JA107-108. The government emphasized that only 69 days after being released from custody did Mr. Acoff commit the crime charges in Count One of the Indictment. *See* JA76.

Mr. Acoff argues the district court's statement "I believe, based on all this, the criminal history is grossly understated," JA82, related solely to its "misapprehension of the facts" regarding Mr. Acoff's attempted murder conviction, but that argument wholly ignores the troubled history outlined above. Indeed, it is clear from the record that, in addition to Mr. Acoff's history of deviance, the district court placed great emphasis on his juvenile conviction for Aggravated Robbery, wherein he used a sawed-off shotgun to rob his victim. *See* JA104-105; JA82; JA130. Under § 4B1.2(d)(2), juvenile convictions are not counted for the purposes of criminal history if the resulting sentences ended more than five years before the commission of the instant offense. However, Application Note 2(B) to § 4A1.3 states that "the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." In this regard, the court properly considered the facts underlying Mr. Acoff's juvenile robbery conviction. *See United States v. Schuler*, 282 F. App'x 221 (4th Cir. 2008) (unpublished) (holding that the district court properly considered three unscored sentences for grand theft, two unscored sentences for retail theft, repeated burglaries of banks, and defendant's immediate resumption of same criminal conduct as soon as he was released from custody). The district court emphasized at sentencing and in its statement of reasons that although Mr. Acoff's

criminal history was correctly calculated in the PSR, it substantially under-represented the seriousness of his criminal history. *See* JA82; *see also* JA130.

For the reasons discussed above, the district court did not abuse its discretion when it made an individualized assessment of Mr. Acoff and provided a specific rationale and thorough explanation for the sentence of 240 months' incarceration imposed.

## CONCLUSION

Therefore, this Court should affirm the judgment of the district court. The United States respectfully suggests that oral argument is not necessary in this case.

Respectfully submitted,

WILLIAM IHLENFELD
United States Attorney


By:    */s/ Carly Cordaro Nogay*
        Carly Cordaro Nogay
        Assistant United States Attorney
        United States Attorney's Office
        Northern District of West Virginia
        1125 Chapline Street, Suite 3000
        P.O. Box 591
        Wheeling, WV 26003
        (304) 234-0100

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with FRAP 32(a) as follows:

This brief has been prepared using Microsoft Word 2016, proportional typeface Times New Roman, 14 point.

EXCLUSIVE of the cover page; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains <u>3,395</u> words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

Date:   <u>August 28, 2023</u>

<u>*/s/ Carly Cordaro Nogay*</u>
Carly Cordaro Nogay
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I, Carly Cordaro Nogay, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on August 28, 2023, I caused this Appellee's Brief to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of this filing to:

McCOID LAW OFFICES, P.L.L.C.
56-58 Fourteenth Street
Post Office Box 1
Wheeling, WV 26003
Telephone: 304-242-2000

*/s/ Carly Cordaro Nogay*
Carly Cordaro Nogay
Assistant United States Attorney